Michael D. Harris (Calif. Bar. No. 59,470)
Email: mharris@socalip.com
Steven C. Sereboff, (Cal. Bar No. 156,731)
Email: SSereboff@socalip.com
M. Kala Sarvaiya, Cal. Bar No. 238,453
KSarvaiya@socalip.com
**SOCAL IP LAW GROUP LLP**
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362
Phone: (805) 230-1350 x246 • Fax: (805) 230-1355

Attorneys for Plaintiffs White Cap Construction Supply,
Inc, and HD Supply Construction Supply, Ltd.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| White Cap Construction Supply, Inc, and HD Supply Construction Supply, Ltd., <br> Plaintiffs, <br> v. <br> Todd Esrey, d.b.a. Esrey.com. and ocean-ographical.com, <br> Defendant. | Case No. <br><br> Complaint for Damages and Equitable Relief for Trademark Infringement, Anticybersquatting Consumer Protection Act, Federal Trademark Dilution, , California Anti-Dilution Statute and California Statutory Unfair Competition |

Plaintiffs White Cap Construction Supply, Inc. ("WCCS") and HD Supply Construction Supply, LP ("HD Supply") (collectively, "White Cap"), for their complaint against defendant Todd Esrey ("Esrey"), allege as follows:

**FIRST CLAIM FOR RELIEF**

**(INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS)**

**A.    JURISDICTION**

1. This claim for relief arises under the Lanham Trademark Act, 15 U.S.C. §§ 1051-1127.

2. This court has subject matter jurisdiction over this claim for relief under 28 U.S.C. § 1338, 15 U.S.C. § 1121(a) and other federal statutes.

**B.    THE PARTIES, PERSONAL JURISDICTION AND VENUE**

3. Plaintiff WCCS is a Delaware corporation with its principal place of business at 3120 Airway Avenue, Costa Mesa, California 92626.

Complaint                                                 1

4. Plaintiff HD Supply is a Florida limited partnership with its principal place of business at One Hughes Way, Orlando, Florida 32805. Plaintiff WCCS is a business of Plaintiff HD Supply.

5. Plaintiff WCCS owns the United States trademark registrations that are the subject matter of this lawsuit, and plaintiff HD Supply is the user of the marks that are the subject of the trademark registration with WCCS's permission.

6. Pursuant to Local Rule 3-2, intellectual property actions are assigned on a district-wide basis.

7. On information and belief, White Cap alleges that defendant Esrey resides at 125 Euclid Avenue, Los Gatos, California 95030, and receives mail at P.O. Box 2520, Saratoga, California 95070. Both addresses are within this district. On information and belief, Esrey does business as Esrey.com.

8. This court has personal jurisdiction over Esrey because he resides and does business in this state.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Esrey is a resident of this district.

C. **PLAINTIFFS' TRADEMARK RIGHTS**

10. White Cap's predecessor in interest founded a store named White Cap Construction Supply in 1976 to provide quality tools and services for the professional contractor community. Today, plaintiff HD Supply operates over 150 "White Cap" stores throughout the United States including some in this district.

11. Over the past 31 years, White Cap and their predecessor in interest have built a strong reputation of being a leader in providing quality products and quality services to the professional contractor community.

12. Over the past 31 years, plaintiff WCCS developed an extensive portfolio of registered trademarks, a few of which are identified below.

13. On or before May 25, 1984, plaintiff HD Supply, through its predecessor in interest, commenced using the mark WHITE CAP in interstate commerce for "retail store and

distributorship services in the field of construction tools, equipment and materials" ("the Services"). In this complaint, the term "WHITE CAP" in all upper case letters refers to plaintiffs' trademarks and service marks.

14. Since May 25, 1984, plaintiff HD Supply and its predecessor in interest continuously used the mark WHITE CAP in interstate commerce for the Services.

15. Plaintiff WCCS owns United States Trademark Registration No. 1,478,065 in International Class 42 for the mark WHITE CAP for the Services (Exhibit A).

16. Plaintiff WCCS owns United States Trademark Registration No. 2,927,946 in International Class 35 for the mark WHITE CAP CONSTRUCTION SUPPLY for "retail stores, wholesale stores and distributorship services in the field of building, construction, electrical and plumbing supplies, materials and equipment" (Exhibit B).

17. Plaintiff HD Supply's predecessors commenced using the mark WHITE CAP in interstate commerce on "non-metallic building materials, namely, soffits, sewer and drain pipe of ceramic or earthenware or concrete or sandstone; deck drains of concrete or ceramic; bituminous waterproofing sheets; non-metal storm water pollution prevention products used as construction materials, namely storm water channels, erosion control jute mesh mats, silt fencing, drain filters, sand bags; non-metal concrete forming products, namely, panels, grout bags, rock texture mats, non-chemical concrete bond brakers, expansion board, curb and gutter felt, rebar caps, column forms, and form board" ("the Goods") on or before February 1, 2004.

18. Plaintiff HD Supply and its predecessor continuously used the mark WHITE CAP in interstate commerce for the Goods since February 1, 2004.

19. Plaintiff WCCS owns United States Registration No. 3,048,812 in International Class 19 for the mark WHITE CAP for the Goods (Exhibit C).

20. Plaintiff HD Supply and its predecessor continuously used the mark WHITE CAP in interstate commerce for the Goods since February 1, 2004.

21. Plaintiff WCCS owns United States Trademark Registration No. 3,026,834 in International Class 19 for the mark WHITE CAP for the Goods (Exhibit D).

22. Plaintiff HD Supply and its predecessor continuously used the mark WHITE CAP in interstate commerce for the Goods since February 1, 2004.

23. Plaintiff HD Supply and its predecessors have spent substantial amounts of money in advertising the WHITE CAP and WHITE CAP CONSTRUCTION SUPPLY marks in the market for the Goods and the Services, and the marks WHITE CAP and WHITE CAP CONSTRUCTION SUPPLY have become distinct for plaintiffs HD Supply's Goods and the Services.

24. White Cap owns considerable goodwill in the marks WHITE CAP and WHITE CAP CONSTRUCTION SUPPLY for the Goods and the Services. The marks registered in WCCS's Registrations Nos. 1,478,065, 2,927,946, 3,048,812 and 3,026,834 ("White Cap Marks") are inherently distinctive and have acquired secondary meaning.

**D.   ESREY'S UNAUTHORIZED USE OF THE WHITE CAP MARK**

25. In or about October 2004, Esrey registered the domain name *whitecap.com* ("Infringing Domain Name"). Esrey also may have registered other domain names that are identical or confusingly similar to trademarks owned by WCCS.

26. Esrey's illegally-registered *whitecap.com* domain name incorporates "White Cap" a term that is identical or confusingly similar to WCCS's registered trademarks.

27. WCCS neither licensed nor authorized Esrey to use the White Cap Marks or to register any domain names that incorporate "White Cap" or any identical or confusingly similar term.

28. Esrey knew at all relevant times that the domain names he registered were identical or confusingly similar to White Cap's trademarks, and Esrey willfully infringed White Cap's trademarks.

29. On numerous occasions, White Cap notified Esrey that White Cap demanded that Esrey transfer the *whitecap.com* domain name to White Cap and that White Cap intended to sue Esrey if he refused.

30. Esrey admitted that he knew about White Cap, its business and the White Cap Marks. Nevertheless he still refused to transfer the *whitecap.com* domain name to White Cap.

Complaint    4

31. Esrey also admitted that he knew that the *whitecap.com* domain name was valuable to White Cap and that White Cap would seek to obtain them from him.

32. Esrey also claimed that he was doing White Cap a favor by "holding" the *whitecap.com* domain name for White Cap. However, he still refused to transfer the domain name to White Cap.

33. After White Cap complained to Esrey and demanded that Esrey transfer the *whitecap.com* domain name to White Cap, Esrey reregistered the domain name through a fictitious entity oceanographical.com. Persons entering *www.whitecap.com* on a web browser are redirected to a website of the United States government and a particular webpage that deals with ocean conditions. That webpage is otherwise available to the public through the government website.

34. Esrey has infringed the White Cap Marks within the meaning of 15 U.S.C. § 1114 by using the domain names *whitecap.com*, and by otherwise using the White Cap Marks or terms that are confusingly similar in connection with the infringing websites.

35. Each of the White Cap Marks is inherently distinctive or has acquired secondary meaning.

36. Registration No. 1,478,065 is incontestable within the meaning of 15 U.S.C. § 1065.

37. Esrey's objectionable use of the White Cap Marks is likely to cause confusion, to cause mistake, or to deceive the public as to the affiliation, connection or association of Esrey with White Cap, or as to the origin, sponsorship, or approval of Esrey's websites, products or services by White Cap or a single source. Additionally, Esrey's objectionable use misappropriates White Cap's extensive goodwill.

38. Esrey's acts of trademark infringement have been committed with the intent to deceive and cause confusion and mistake, and were otherwise deliberate, knowing, willful or in bad faith.

39. White Cap has been and will continue to be damaged by Esrey's infringement of the White Cap Marks.

40. When persons type "whitecap.com" into their browsers, they expect to see content from plaintiffs White Cap. Instead because of Esrey's acts, they see a webpage from a government website.

41. White Cap has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Esrey.

## SECOND CLAIM FOR RELIEF

## (FEDERAL TRADEMARK DILUTION – 15 U.S.C. § 1125(C))

42. This court has subject matter jurisdiction over this claim for relief under 28 U.S.C. § 1338, 15 U.S.C. § 1121(a) and other federal statutes.

43. White Cap incorporates paragraphs 1 through 43 of this complaint by reference.

44. The White Cap Marks are famous throughout the United States.

45. Esrey began his commercial use of the White Cap Marks in commerce after the White Cap Marks had become famous.

46. Esrey has diluted the White Cap Marks within the meaning of 15 U.S.C. § 1125(c).

47. White Cap has not authorized Esrey to continue his use of the White Cap Marks.

48. Esrey's use of the Infringing Domain Name and other use of the White Cap Marks dilutes the quality of the White Cap Marks by diminishing the capacity of the White Cap Marks to identify and distinguish White Cap's good or services. Esrey's use of the Infringing Domain Name also dilutes the quality of the White Cap Marks by tarnishing the good name and reputation of White Cap.

49. Esrey's acts of trademark dilution have been deliberate, knowing, willful or in bad faith.

50. White Cap has no adequate remedy at law and is suffering irreparable harm and damage as a result of the acts of Esrey.

**THIRD CLAIM FOR RELIEF**

**(ANTICYBERSQUATTING CONSUMER PROTECTION ACT – 15 U.S.C. § 1125(d))**

51. This court has subject matter jurisdiction over this claim for relief under 28 U.S.C. § 1338, 15 U.S.C. § 1121(a) and other federal statutes.

52. White Cap incorporates paragraphs 1 through 52 of this complaint by reference.

53. Esrey registered the domain names *whitecap.com* with a bad faith intent to profit from the White Cap Marks.

54. The White Cap Marks were distinctive at the time of Esrey's registration of their domain names.

55. Esrey's Infringing Domain Name *whitecap.com* is identical or confusingly similar to and dilutive of the White Cap Marks.

56. Esrey's actions violate the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

**FOURTH CLAIM FOR RELIEF**

**(CALIFORNIA ANTI-DILUTION STATUTE – CAL. BUS. & PROF. CODE § 14330)**

57. This court has subject matter jurisdiction under 28 U.S.C. § 1338(b) in that this is a claim for relief of unfair competition that is joined with a substantial and related claim under the federal trademark laws.

58. White Cap incorporates paragraphs 1 through 58 of this complaint by reference.

59. Esrey has diluted the White Cap Marks within the meaning of the California Anti-Dilution Statute, Calif. Bus. & Prof. Code § 143

60. Esrey's use of the distinctive marks and domain names is unauthorized and without White Cap's consent.

61. The White Cap Marks are distinctive.

62. Based on the long-term and extensive use of the White Cap Marks, the White Cap Marks have become strong, famous and otherwise well-recognized in California and throughout the United States.

63. Esrey's use of the White Cap Marks dilutes the distinctiveness of the marks and is likely to injure White Cap's reputation.

64. Esrey's acts of trademark dilution have irreparably damaged and are likely to continue to cause irreparable damage to White Cap's business, reputation and goodwill.

### FIFTH CLAIM FOR RELIEF

### (CALIFORNIA STATUTORY UNFAIR COMPETITION)

65. This court has subject matter jurisdiction under 28 U.S.C. § 1338(b) in that this is a claim for relief of unfair competition that is joined with a substantial and related claim under the federal trademark laws.

66. White Cap incorporates paragraphs 1 through 66 of this complaint by reference.

67. Esrey has attempted to trade off of White Cap's goodwill by registering the Infringing Domain Name. Among other things, some people may search for information about White Cap's products on the Internet by entering one of the Infringing Domain Name into a web browser. Such persons would be redirected to the websites linked to the Infringing Domain Name by Esrey, where they would be exposed to links, advertisements and products and services of Esrey or third parties. Esrey registered the Infringing Domain Name in an effort to exploit the value of the White Cap Marks for Esrey's commercial advantage.

68. Esrey's conduct constitutes unlawful, unfair or fraudulent business acts or practices in violation of Calif. Bus. & Prof. Code § 17200, *et seq*.

69. Unless Esrey is restrained from continuing these unlawful, unfair and fraudulent business acts or practices, White Cap will suffer irreparable injury.

### PRAYER FOR RELIEF

WHEREFORE, White Cap prays for judgment against Esrey as follows:

70. For an order directing Esrey forthwith to direct the domain name registrar Network Solutions, Inc. ("NSI") to transfer the registration and ownership of the Infringing Domain Name to White Cap permanently;

71. For a preliminary injunction and permanent injunction against Esrey, his agents, servants, representatives, employees, attorneys, related companies, partners, successors, predecessors, assigns, and all persons acting for, with, by or through, or under him:

    (a) Restraining them from selling or offering for sale to third parties the Infringing Domain Name or any other domain names that are confusingly similar to or dilutive of the White Cap Marks.

    (b) Restraining them from using in any manner the Infringing Domain Name, or any other domain names that are confusingly similar to or dilutive of the White Cap Marks, as the domain name of any website, as part of a URL, in connection with the retrieval of data or information on the Internet, in connection with e-mail, or in connection with the advertising or promotion of any goods, services, or websites;

    (c) Restraining them from directly or indirectly using the White Cap Marks or any other name or mark similar to the White Cap Marks in a manner likely to cause dilution, confusion, or mistake, or to deceive; and

    (d) Restraining them from using in any manner a name or mark similar to the White Cap Marks in connection with Esrey's goods or services in such a manner that is likely to create the erroneous belief that said goods or services are authorized by, sponsored by, licensed by, or are in some way associated with White Cap;

72. For statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just;

73. For disgorgement or restitution of all gains, profits, and advantages derived by Esrey from his acts of unfair competition, infringement, and other violations of law;

74. For monetary damages sustained by White Cap as a result of Esrey's unlawful acts alleged herein;

75. For treble damages pursuant to statute;

76. For punitive damages;

77. For prejudgment interest at the maximum legal rate;

78. For an order, pursuant to 15 U.S.C. § 1118, that all domain names, websites, website graphics, electronic text (including but not limited to domain names, website names and metatags), electronic storage media (including any removable media, servers and other physical storage devices that host or store the information for the websites linked to the Infringing Domain Name), labels, signs, prints, packages, stationary, promotional materials and advertisements in the possession of Esrey bearing the White Cap Marks or the Infringing Domain Name, and all software, hardware, computer files and other means of making same, be delivered up and destroyed;

79. For a determination by the Court that this is an exceptional case and that therefore that White Cap be awarded its costs and attorneys' fees incurred by White Cap in bringing and prosecuting this action under 15 U.S.C. § 1117(a); and

80. For such other and further relief as the Court may deem just and proper.

July 18, 2007

Michael D. Harris
SOCAL IP LAW GROUP LLP
Attorney for Plaintiffs White Cap Construction Supply, Inc. and HD Supply Construction Supply, Ltd.





Complaint                                    12                                  Exhibit B



Complaint 13 Exhibit B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Complaint 14 Exhibit D